UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **TRAVIS LEJEUNE, ET AL.** | **CIVIL DOCKET NO. 6:24-cv-01586** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **TALOS ENERGY LLC, ET AL.** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 54] filed by Talos Energy LLC ("Talos"). Talos seeks dismissal of all claims, asserting that the undisputed evidence shows it neither created nor controlled the alleged dangerous condition on Nabors' rig, had no notice of it, and did not otherwise cause or contribute to Plaintiff Travis LeJeune's ("LeJeune") accident or injuries. The Motion is unopposed. After careful consideration, and for the reasons set forth below, Talos's Motion is GRANTED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises from a workplace accident that occurred on October 20, 2023, when LeJeune, an employee of Offshore Energy Services, LLC ("OES"),[1] allegedly fell down the stairs of a drilling rig located on a fixed platform at Ewing Bank 873 in the Gulf on the outer continental shelf off the coast of Louisiana. [Doc. 1-1, at pp. 1-2; Doc. 45, at pp. 1-3]. At the time, Talos Energy Ventures, LLC, an indirectly wholly owned subsidiary of Talos Energy Inc., was the majority owner of the platform, while Nabors Drilling Technologies USA, Inc. and/or Nabors Offshore

1 On the date of the alleged incident, LeJeune was working as a floorhand running casing on the rig.

Corporation ("Nabors") owned and operated the MOD 200 drilling rig situated on the platform. [Doc. 8, at pp. 6-7; Doc. 45, at ¶ 3]. Plaintiffs allege that, while LeJeune was working on the rig, a Nabors employee was washing mud from the rig's staircase with materials that rendered the stairs unreasonably dangerous, causing LeJeune to fall and sustain injuries. [Doc. 45, at ¶ 10]. Plaintiffs do not allege that the stairs or any equipment owned by Talos caused or contributed to the accident.

Plaintiffs filed suit in the Fifteenth Judicial District Court for the Parish of Lafayette on October 10, 2024. [Doc. 1-1]. The matter was removed to this Court on November 19, 2024, under 28 U.S.C. § 1441(a) and (c)(1)(A) because this Court would have had original subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331. Plaintiffs amended their state court petition on June 9, 2026. [Doc. 45]. In their Amended Complaint, Plaintiffs allege that LeJeune's injuries resulted from the fault and negligence of Talos in: (i) creating and/or allowing unsafe conditions; (ii) failing to repair said unreasonably dangerous conditions; (iii) failing to mark and/or warn LeJeune of the unreasonably dangerous condition; (iv) disregarding rules and regulations created for the safety of employees and/or contractors working aboard the subject platform; (v) ordering and directing work to be performed in unsafe and/or hazardous work conditions; (vi) using and/or allowing employees to use unsafe and hazardous equipment; (vii) failing to maintain a safe workplace, including but not limited to utilizing an anti-slip staircase; (viii) failing to supervise, inspect, monitor, supervise its employees and its procedures; (ix) disregarding rules and regulations created for the safety of employees working on the subject platform; and (x) failing to properly train its supervisors. [Doc. 45, ¶ 15].

In the instant Motion, Talos argues that the undisputed evidence establishes that it did not create or control the allegedly dangerous condition on Nabors' rig, it had no notice of that condition, and it did not cause or contribute to LeJeune's accident or injuries. Plaintiffs have filed no opposition to the motion, and the time for doing so has expired. The Motion is therefore ripe for consideration.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, the court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing

Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

Here, Plaintiffs have not filed an opposition to the instant Motion. Nevertheless, it is improper for the Court to simply grant the instant Motion as unopposed. *See, e.g.*, *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012), *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam), and *John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985), *cited in Clifton v. Famous Bourbon Mgmt. Grp., Inc.*, 762 F.Supp.3d 480, 488 (E.D. La. Jan. 15, 2025). Instead, the Court must determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment as a matter of law. *Clifton,* 762 F. Supp. 3d at 488, *citing Servicios Azucareros de Venezuela, C.A*, 702 F.3d at 806.

## II. Analysis

The subject accident occurred on the outer continental shelf off the coast of Louisiana. The Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a)(2)(A), "adopts the law of the adjacent state as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations; thus the law applicable is 'federal law,' supplemented by state law of the adjacent state." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003). Because

the accident occurred on a fixed platform located on the outer continental shelf adjacent to Louisiana, and because maritime law does not apply of its own force, Louisiana law supplies the applicable substantive law for Plaintiffs' negligence claims. *Soileau v. Era Helicopters LLC*, 2018 WL 4997148, at *1 (W.D. La. Oct. 15, 2018), *citing Fornah v. Schlumberger Technology Corp.*, 737 F. App'x 677, 680 (5th Cir. 2018).

Louisiana courts employ a duty-risk analysis in adjudicating negligence claims under Louisiana Civil Code article 2315. *Miller v. Cox Operating, LLC*, 2025 WL 2355612, at *3 (W.D. La. Aug. 13, 2025), *citing Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019), *citing Duncan v. Kansas City S. Ry. Co.*, 773 So. 2d 670, 675 (La. 2000). To establish a cause of action for negligence, a plaintiff must establish that: (i) the defendant had a duty to conform his conduct to a specific standard; (ii) the defendant's conduct failed to conform to that standard; (iii) the defendant's breach was a cause in fact of the plaintiff's injuries; (iv) the defendant's breach was a legal cause of the plaintiff's injuries; and (v) actual damages. *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 568 (5th Cir. 2020), *citing Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627 (La. 2006). Under Louisiana negligence law, the existence of a legal duty depends on the facts and circumstances of the case and the relationship of the parties. *Miller*, 2025 WL 2355612 at *6, *citing Seals v. Morris*, 410 So. 2d 715, 718 (La. 1981). Generally, duty is defined as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. *Id.*

In its Motion, Talos relies on cases addressing the duty, if any, owed by one independent contractor to an employee of another independent contractor. But those

cases do not directly address the relationship presented here. Talos was the owner of the platform, while Nabors and OES were independent contractors performing work thereon. Thus, the relevant inquiry is whether Talos, as the platform owner, owed LeJeune a duty to protect him from the activities of, or hazards created by, an employee of another independent contractor. Here, specifically, the question is whether Talos had a duty to intervene in the allegedly unsafe acts of the Nabors employee who, LeJeune alleges, was hosing down the rig stairs with a liquid that made the stairs unsafe.

Under Louisiana negligence law, the Fifth Circuit has consistently held on similar facts that a principal, such as Talos, who hires independent contractors over which it exercises no operational control has no duty to discover and remedy hazards created by its independent contractors. *See, e.g., Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003), *citing Coulter v. Texaco,* 117 F.3d 909, 912 (5th Cir.1997) (holding that a principal is not liable for the actions of its independent contractor unless the principal retained "operational control" over the contractor's work or expressly or impliedly approved its unsafe work practice that led to an injury). "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge*, 337 F.3d at 564 (5th Cir. 2003), *citing LeJeune v. Shell Oil Co.,* 950 F.2d 267–270 (5th Cir.1992); *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 175 n.9 (5th Cir.1979). In determining that the principal (the platform owner, Anadarko) exerted no operational control over the activities and work of its independent contractors, the *Fruge* court examined both the contractual

relationship between Anadarko and its contractors[2] and the actual day-to-day practices governing their operations. 337 F.3d at 564.

Here, Talos has not provided the contracts between Talos and Nabors and Talos and OES, so the Court is unable to examine the contractual relationship between Talos and each independent contractor. Rather, Talos presents the deposition testimony of LeJeune, who testified that Talos did not instruct him on how to perform his work and that he received instructions concerning the casing work from his OES supervisor. [Doc. 54-3, at pp. 50-51]. LeJeune further testified that he never reported an unsafe condition on the platform to Talos, never told anyone from Talos about the stairs on the Nabors rig, and never informed Talos that a Nabors employee was washing the stairs. *Id.* at pp. 126-127. Talos further contends that several current and former Nabors employees were also deposed during discovery, but none testified that Talos was at fault for the accident or had knowledge of any alleged unsafe condition of the Nabors' rig's stairs. [Doc. 54-1, at p. 3].

The record establishes that Talos has presented competent summary judgment evidence demonstrating that it neither created nor exercised control over the

---

[2] In *Fruge*, Anadarko contracted with Parker Drilling Offshore Corporation as drilling contractor to complete a well on Anadarko's stationary platform. Plaintiff's employer, M–I, LLC, was under contract with Anadarko to provide filtration services for the project. The plaintiff was operating a filter unit on the platform when a discharge hose which was part of Parker's rig ruptured and injured him. 337 F.3d at 560. The *Fruge* court explained that the first step in its analysis was to "examine the extent to which Anadarko contractually reserved the right to control the work." 337 F.3d at 564, *citing Coulter,* 117 F.3d at 912. Examination of the contract established that Parker was exclusively responsible for controlling the details of the work it performed: the contract provided that Parker "shall be an independent contractor with respect to performance of all work hereunder. [Anadarko] shall have *no direction or control* of [Parker] or [Parker's] Personnel except in the results to be obtained." 337 F.3d at 564.

allegedly dangerous condition on the Nabors rig. It did not have notice of the allegedly unsafe condition on the rig's stairs, and there is no testimony or other summary judgment evidence that Talos otherwise caused or contributed to LeJeune's accident. And Plaintiffs have failed to adduce any evidence that controverts Talos's showing or establishes a factual dispute as to whether Talos owed or breached a duty to Lejeune or whether any conduct by Talos caused his injuries. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Accordingly, because there is no summary judgment evidence that creates a genuine dispute of material fact, Talos is entitled to judgment as a matter of law.

## CONCLUSION

Considering the foregoing,

IT IS HEREBY ORDERED that the MOTION FOR SUMMARY JUDGMENT filed by Talos Energy LLC [Doc. 54] is GRANTED, and all claims asserted by Plaintiffs against Talos Energy LLC are DENIED AND DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 16th day of September 2026.

David C. Joseph

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE